GLENN L. BRIGGS (SBN 174497)
Email: gbriggs@kadingbriggs.com
THERESA A. KADING (SBN 211469)
Email: tkading@kadingbriggs.com
P. BARTHOLOMEW QUINTANS (SBN 308085)
Email: bquintans@kadingbriggs.com
KADING BRIGGS LLP
100 Spectrum Center Drive, Suite 800
Irvine, California 92618
Telephone: (949) 450-8040
Facsimile: (949) 450-8033

Attorneys for Defendant
WELLS FARGO BANK, N.A.

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MERYAM POPAL, an individual on behalf of herself and other current and former employees,<br><br>Plaintiff,<br><br>vs.<br><br>WELLS FARGO BANK, N.A., and DOES 1 through 50,<br><br>Defendants. | CASE NO.: **'19CV1206 BAS LL**<br><br>[San Diego County Superior Court Case No.: 37-2019-00025570-CU-OE-CTL]<br><br>**DEFENDANT WELLS FARGO BANK, N.A.'S NOTICE OF REMOVAL OF ACTION TO UNITED STATES DISTRICT COURT PURSUANT TO 28 U.S.C. §§ 1332(d), 1441 AND 1446**<br><br>Complaint Filed: May 17, 2019 |

441408

1

1

# **TABLE OF CONTENTS**

**PAGE NO.**

2

3      I.      THE STATE COURT ACTION ..................................................... 6

4      II.     REMOVAL PURSUANT TO 28 U.S.C. SECTIONS 1332(d),
              1441, AND 1446 ........................................................................... 7

5
              A.     Diversity of Citizenship .......................................................... 7

6
                     1.     Plaintiff is a Citizen of California ............................... 7

7
                     2.     Wells Fargo Bank is a Citizen of South Dakota ..................... 8

8
              B.     The Putative Class Action Exceeds 100 Members .............................. 9

9
              C.     The Amount in Controversy Exceeds $5,000,000 ........................... 10

10
                     1.     First Cause of Action (Failure to Provide Accurate

11                          Wage Statements)...................................................... 11

12                   2.     Second Cause of Action (Failure to Pay Overtime

13                          Wages)........................................................................ 13

14                   3.     Fourth Cause of Action (Waiting-Time Penalties) ................. 15

15                   4.     Summary re: Amount in Controversy ..................................... 17

16     III.    PROCESS, PLEADINGS AND ORDERS ................................................. 18

17

18

19

20

21

22

23

24

25

26

27

28

441408

# TABLE OF AUTHORITIES

**PAGE NO.**

## STATE CASES

*Alvarado v. Dart Container Corp. of California,*
    4 Cal. 5th 542 (2018) ................................................................. 14

*Korea Supply v. Lockheed Martin Corp.,*
    29 Cal. 4th 1134 (2003) ............................................................. 15

*Mamika v. Barca,*
    68 Cal. App. 4th 487 (Cal. Ct. App. 1998) ............................... 16

*Pineda v. Bank of Am.,*
    50 Cal. 4th 1389 (2010) ............................................................. 16

## FEDERAL CASES

*Abrego Abrego v. The Dow Chemical Co.,*
    443 F.3d 676 (9th Cir. 2006) ....................................................... 7

*Brewer v. General Nutrition Corp.,*
    No. 11-CV-3587 YGR, 2015 WL 5072039 (N.D. Cal. Aug. 27, 2015) ..... 16

*Bush v. Cheaptickets, Inc.,*
    425 F.3d 683 (9th Cir. 2005) ....................................................... 7

*Chavez v. JPMorgan Chase & Co.,*
    888 F.3d 413, 414–15 (9th Cir. 2018) ....................................... 17

*Dart Cherokee Basin Operating Co., LLC v. Owens ("Dart"),*
    135 S. Ct. 547 (2014) ............................................................. 9, 10

*Fritsch v. Swift Transportation Co. of Arizona, LLC,*
    899 F.3d 785 (9th Cir. 2018) ..................................................... 17

*Ibarra v. Manheim Investments, Inc.,*
    775 F.3d 1193 (9th Cir. 2015) ................................................... 10

*Kaneter v. Warner-Lambert Co.,*
    265 F.3d 853 (9th Cir. 2001) ....................................................... 7

*Kroske v. U.S. Bank,*
    432 F.3d 976 (9th Cir. 2005) ..................................................... 11

*Lew v. Moss,*
    797 F.2d 747 (9th Cir. 1986) ....................................................... 7

*Lowdermilk v. U.S. Bank Nat'l Ass'n,*
    479 F.3d 994 (9th Cir. 2007) ..................................................... 18

*McKenna v. Wells Fargo Bank, N.A.,*
    693 F.3d 207 (1st Cir. 2012) ........................................................ 9

441408

3

1

## <u>TABLE OF AUTHORITIES (cont'd)</u>

<u>PAGE NO.</u>

2

## <u>FEDERAL CASES</u>

3 *Marquez v. Toll Glob. Forwarding (USA) Inc.*,
    No. 218CV03054ODWASX,
4    2018 WL 3046965 (C.D. Cal. June 19, 2018) ............................................. 16

5 *Martinez v. Morgan Stanley & Co. Inc.*,
    No. 09CV2937-L(JMA),
6    2010 WL 3123175 (S.D. Cal. Aug. 9, 2010) ........................................ 12, 13

7 *Montecino v. Spherion Corp.*,
    427 F. Supp. 2d 965 (C.D. Cal. 2006) ........................................................ 16

8
 *Morales v. Jerome's Furniture Warehouse*,
9    No. 18CV1662 JM(AGS),
    2019 WL 1091444 (S.D. Cal. Mar. 8, 2019) ............................................ 12

10
 *Rea v. Michaels Stores Inc.*,
11    742 F.3d 1234 (9th Cir. 2014) .................................................................. 11

12 *Rodriguez v. AT & T Mobility Serv. LLC*,
    728 F.3d 975 (9th Cir. 2013) .................................................................... 18

13
 *Rouse v. Wachovia Mortgage, FSB*,
14    747 F.3d 707 (9th Cir. 2014) ................................................................. 8, 9

15 *Theis Research, Inc. v. Brown & Bain*,
    400 F.3d 659 (9th Cir. 2005) .................................................................... 11

16
 *Wachovia Bank v. Schmidt*,
17    546 U.S. 303 (2006) .................................................................................... 9

18

## <u>STATUTES</u>

19 28 U.S.C. Section 1332(d) ........................................................................... 6, 7

20 28 U.S.C. Section 1332(d)(2) ..................................................................... 17, 18

21 28 U.S.C. Section 1332(d)(2)(A) ...................................................................... 7

22 28 U.S.C. Section 1332(d)(2)(6) ..................................................................... 10

23 28 U.S.C. Section 1332(d)(5)(B) ...................................................................... 9

24 28 U.S.C. Section 1348 ............................................................................... 8, 9

25 28 U.S.C. Section 1441 .......................................................................... 6, 7, 18

26 28 U.S.C. Section1441(a) ................................................................................. 6

27 28 U.S.C. Section 1446 ..................................................................................... 7

28 28 U.S.C. Section 1446(b) ................................................................................ 6

4

# TABLE OF AUTHORITIES

**PAGE NO.**

## STATUTES

28 U.S.C. Section 1446(c)(2)................................................................. 10

28 U.S.C. Section 1446(c)(2)(A) ......................................................... 10

California Business & Professions Code Section 17200 ................................ 11, 15

California Business & Professions Code Section 17208 ...................................... 15

California Code of Civil Procedure Section 340 ............................................. 13

Labor Code Section 201 ........................................................................ 11, 15

Labor Code Section 203 ................................................................ 11, 15, 16

Labor Code Section 226 .................................................................. 11, 13

Labor Code Section 226(a) .................................................................... 12

Labor Code Section 226(e) .................................................................... 12

Labor Code Section 226(e)(1)................................................................. 13

Labor Code Section 227.3 .................................................................... 11

Labor Code Section 510........................................................................ 11

Labor Code Section 558........................................................................ 11

Labor Code Section 1194...................................................................... 11

Senate Report on CAFA, S. Rep. 109-14, at p. 42 (Feb. 28, 2005)...................... 11

441408

5

1
2
3

TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF CALIFORNIA, PLAINTIFF AND HER
ATTORNEYS OF RECORD:

4

5
6
7

PLEASE TAKE NOTICE THAT, based on the following allegations,
Defendant Wells Fargo Bank, N.A. ("Wells Fargo Bank"), hereby removes the state
court action described below.

8

9  **I.    THE STATE COURT ACTION**

10  On May 17, 2019, Plaintiff Meryam Popal ("Plaintiff") filed a class action
11  complaint against Wells Fargo Bank in the Superior Court of the State of California
12  in and for the County of San Diego,[1] entitled *Meryam Popal v. Wells Fargo Bank,*
13  *N.A.*, as case number 37-2019-00025570-CU-OE-CTL.  A true and correct copy of
14  the Class Action Complaint ("Complaint") is attached hereto as Exhibit A.  A true
15  and correct copy of the corresponding Summons, filed on May 17, 2019, is attached
16  hereto as Exhibit B.

17  Plaintiff served Wells Fargo Bank with the Complaint and Summons by
18  personal service on May 29, 2019.  A true and correct copy of Corporation Service
19  Company's Notice of Service of Process, showing the date of service, is attached
20  hereto as Exhibit C.  This Notice of Removal is filed within 30 days from the date
21  upon which Wells Fargo Bank was served and is within the time for removal
22  provided by law.  *See* 28 U.S.C. § 1446(b).

23  This is a civil action of which this Court has original jurisdiction under 28
24  U.S.C. section 1332(d), and is one that may be removed to this Court by Wells
25  Fargo Bank pursuant to the provisions of 28 U.S.C. section 1441, in that it is a class
26  action in which Plaintiff is a citizen of a different state than Wells Fargo Bank, the

27
28

[1] Venue is proper in this district, pursuant to 28 U.S.C. § 1441(a), because it encompasses
the county in which this action has been pending.

6

1    putative class has more than 100 members, and the aggregate amount in controversy

2    exceeds the sum of $5,000,000, exclusive of interest and costs.

3    **II.    REMOVAL PURSUANT TO 28 U.S.C. SECTIONS 1332(d), 1441, AND**

4    **1446**

5        **A.    Diversity of Citizenship**

6           Federal jurisdiction under the Class Action Fairness Act of 2005 ("CAFA")

7    is established by showing that the parties satisfy, among other requirements,

8    "minimal diversity," *i.e.,* that "any member of a class of plaintiffs is a citizen of a

9    State different from any defendant." 28 U.S.C. § 1332(d)(2)(A); *Abrego Abrego v.*

10   *The Dow Chemical Co.*, 443 F.3d 676, 680 (9th Cir. 2006) ("Section 1332(d) thus

11   abandons the complete diversity rule for covered class actions") (citing *Bush v.*

12   *Cheaptickets, Inc.*, 425 F.3d 683, 684) (9th Cir. 2005) (noting that 28 U.S.C. §

13   1332(d) requires only "minimal diversity"). As discussed below, minimal diversity

14   is satisfied in this case because Plaintiff is a citizen of the State of California and

15   Wells Fargo Bank is a citizen of the State of South Dakota.

16       **1.    Plaintiff is a Citizen of California**

17          For diversity purposes, citizenship of an individual is determined by the

18   individual's domicile at the time that the lawsuit is filed. *Lew v. Moss*, 797 F.2d

19   747, 749-50 (9th Cir. 1986). "A person's domicile is her permanent home, where

20   she resides with the intention to remain or to which she intends to return." *Kaneter*

21   *v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001). As the Ninth Circuit

22   observed in *Lew*, determining an individual's domicile "involves a number of

23   factors," including ***current residence, place of employment,*** and other factors such

24   as voting registration and voting practices, location of personal and real property,

25   location of brokerage and bank accounts, location of spouse and family,

26   membership in unions and other organizations, driver's license and automobile

27   registration, and payment of taxes. *Lew*, 797 F.2d at 750 (emphases added).

28

441408

1    Plaintiff alleges in her Complaint that the County of San Diego "is where
2    Plaintiff was employed and is where the wrongful misconduct alleged [in the
3    Complaint] occurred," and that Plaintiff is and remains "an individual residing in
4    the County of San Diego, California." *See* Exhibit A, ¶¶ 7-8.

5    Given that Plaintiff remains a resident of California (even after the
6    termination of her employment with Wells Fargo Bank), Plaintiff has demonstrated
7    an intent to remain in the State of California. Wells Fargo Bank is informed and
8    believes that Plaintiff was, and still is, a citizen of the State of California.
9    Accordingly, for diversity purposes, Plaintiff is a citizen of California.

10    **2.    Wells Fargo Bank is a Citizen of South Dakota**

11    Wells Fargo Bank is a national banking association. The citizenship of a
12    national banking association is governed by 28 U.S.C. section 1348, which states
13    that national banking associations are "deemed citizens of the States in which they
14    are respectively ***located***." 28 U.S.C. § 1348 (emphasis added).

15    Wells Fargo Bank's main office, according to its articles of association, is in
16    Sioux Falls, South Dakota. Attached hereto as Exhibit D is a true and correct copy
17    of the Articles of Association for Wells Fargo Bank, as issued by the Office of the
18    Comptroller of the Currency, Administrator of National Banks, reflecting that Wells
19    Fargo Bank (at Article II, §1) has its main office in Sioux Falls, South Dakota.[2]

20    The Ninth Circuit has unequivocally held that Wells Fargo Bank is a citizen
21    *only* of South Dakota for diversity purposes. *Rouse v. Wachovia Mortgage, FSB*,[3]
22    747 F.3d 707, 709 (9th Cir. 2014) ("under 28 U.S.C. § 1348, a national bank is a
23    citizen ***only of the state in which its main office is located***") (emphasis added). In
24    addition, the United States Supreme Court, after a thorough examination of the
25    historical versions of Section 1348 and the existing case law, held that "a national

26

27    [2] In the contemporaneously-filed Request for Judicial Notice, Wells Fargo Bank requests
that the Court take judicial notice of Wells Fargo Bank's Articles of Association.

28    [3] Wachovia Mortgage is now a division of Wells Fargo Bank. *Rouse*, 747 F.3d at 709.

441408

8

1  bank, for § 1348 purposes, is a citizen of the state in which its main office, as set

2  forth in its articles of incorporation, is located."  *Wachovia Bank v. Schmidt*, 546

3  U.S. 303, 307 (2006).  Wells Fargo Bank's citizenship for diversity purposes,

4  therefore, is South Dakota – and *only* South Dakota.  *Rouse*, 747 F.3d at 715

5  ("Accordingly, Wells Fargo is a citizen only of South Dakota, where its main office

6  is located"); *see also McKenna v. Wells Fargo Bank, N.A.*, 693 F.3d 207, 212 (1st

7  Cir. 2012) (Wells Fargo is a citizen of South Dakota for diversity purposes).

8      Pursuant to this binding authority, Wells Fargo Bank is a citizen only of

9  South Dakota.  As Plaintiff is a citizen of California, CAFA's minimal diversity

10  requirement is satisfied.

11      **B.    The Putative Class Action Exceeds 100 Members**

12      Federal jurisdiction under CAFA may be invoked where the number of

13  putative class members exceeds 100.  28 U.S.C. § 1332(d)(5)(B); *see also Dart*

14  *Cherokee Basin Operating Co., LLC v. Owens* ("*Dart*"), 135 S. Ct. 547, 552 (2014).

15      Plaintiff brings a wage-and-hour class action alleging claims on behalf of

16  three classes.  Class A is "[a]ll persons who worked as nonexempt employees for

17  Defendant in California at any time from four years prior to the date of filing of this

18  action through the date of trial."  Exhibit A, ¶ 26.  Plaintiff's putative Classes B and

19  C include all nonexempt employees who "received payment for paid time off" or

20  "who received payment for overtime hours worked," respectively.  *Id.*  Plaintiff

21  does not specify the exact number of putative class members, but alleges that

22  "[d]uring the relevant period, Defendants [sic] are believed to have employed more

23  than 100 employees" and that "the individuals included within the alleged Class are

24  so numerous that joinder of each of them would be impracticable . . . ."  Exhibit A,

25  ¶¶ 15, 27.

26      The number of putative class members (current and former California non-

27  exempt team members who worked for Wells Fargo Bank in California in the four

28

441408

1   years prior to the filing of Plaintiff's Complaint) exceeds 20,000 individuals,[4]

2   clearly meeting CAFA's 100-class-member requirement.

3       **C.    The Amount in Controversy Exceeds $5,000,000**

4       For removal purposes under CAFA, the aggregate amount in controversy

5   must exceed $5,000,000, exclusive of interest and costs. 28 U.S.C. § 1332(d)(2)(6).

6   Where the plaintiff's complaint makes a good-faith demand for monetary relief in a

7   stated sum, that sum is deemed to be the amount in controversy. 28 U.S.C. §

8   1446(c)(2). Where, as here, the complaint does not state the amount in controversy,

9   the defendant's notice of removal may do so. *Dart*, 135 S. Ct. at 551 (citing 28

10  U.S.C. § 1446(c)(2)(A)).

11      As the U.S. Supreme Court held in *Dart*, the notice of removal need only

12  *plausibly allege* the amount in controversy; the defendant's "short and plain"

13  statement of the grounds for removal need *not* contain evidentiary submissions.

14  *Dart*, 135 S. Ct. at 554. The Supreme Court also observed that "no antiremoval

15  presumption attends cases invoking CAFA, which Congress enacted to facilitate

16  adjudication of certain class actions filed in federal court." *Id.* Similarly, the Ninth

17  Circuit has noted that "Congress intended CAFA to be interpreted expansively."

18  *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) (citing

---

19  [4] Plaintiff's putative class is defined as all California non-exempt team members who
20  work or worked in California at any time since May 17, 2015. *See* Exhibit A, ¶ 26.
    Plaintiff further alleges that her "claims are typical of those belonging to the members of
21  the Class they [sic] seek to represent . . . ." Exhibit A, ¶ 29. In particular, Plaintiff alleges
22  that "during all times relevant to this action," Wells Fargo Bank failed to provide accurate
    wage statements, to pay overtime, to provide sick leave, to timely pay wages to putative
23  class members. *See id.*, ¶¶ 16-23. While Wells Fargo Bank disputes maintaining any
24  illegal policies and disputes that any team member experienced an alleged wage-and-hour
    violation, for the purposes of this removal, Plaintiff's own allegations that Wells Fargo
25  Bank employed policies and practices that were applied company-wide supports the
    inference that Plaintiff's putative class is alleged to encompass all California non-exempt
26  team members during the relevant period. Wells Fargo Bank's review of its records
27  shows that it has employed at least 20,000 individuals in non-exempt positions in
    California during the time period from May 17, 2015, through the filing of the Complaint
28  on May 17, 2019.

441408

NOTICE OF REMOVAL

1   Senate Report on CAFA, S. Rep. 109-14, at p. 42 (Feb. 28, 2005), which counsels

2   that if a federal court is "uncertain" about whether all matters in controversy exceed

3   $5,000,000, "*the court should err in favor of exercising jurisdiction over the case*")

4   (emphasis added)).

5        The "amount in controversy" is determined by the amount of damages that is

6   the subject of the action. *Kroske v. U.S. Bank*, 432 F.3d 976, 980 (9th Cir. 2005).

7   In other words, it is "the amount involved in the underlying dispute." *Theis*

8   *Research, Inc. v. Brown & Bain*, 400 F.3d 659, 664 (9th Cir. 2005); *see also Rea v.*

9   *Michaels Stores Inc.*, 742 F.3d 1234, 1237 (9th Cir. 2014) ("[T]he general rule is

10  that 'the amount in controversy is determined from the pleadings as they exist at the

11  time a petition for removal is filed.").

12       Plaintiff purports to assert six causes of action against Wells Fargo Bank on

13  behalf of the putative class:  (i) failure to provide accurate itemized wage statements

14  (Labor Code § 226); (ii) failure to pay overtime wages (Labor Code §§ 510, 558,

15  and 1194); (iii) failure to pay vacation (Labor Code § 227.3); (iv) failure to pay

16  wages timely upon termination (Labor Code §§ 201-203); (v) unfair business

17  practices (California Business & Professions Code §§ 17200 *et seq.*); and (vi)

18  conversion. *See* Exhibit A, ¶¶ 30-74. As demonstrated below in relation to just a

19  few of the causes of action, the aggregate amount in controversy clearly exceeds the

20  sum of $5,000,000, exclusive of interests and costs.[5]

   **1.   First Cause of Action (Failure to Provide Accurate Wage**
   **Statements)**

23       Plaintiff alleges that "during all times relevant to this action, Defendants'

24  employees, including Plaintiff, received wage statements that failed to comply with

25  Labor Code section [sic] 226(a)(1)-(a)(9)" because, as a general matter, "the

---

[5] Wells Fargo Bank's demonstration that the amount in controversy exceeds the $5,000,000 minimum is not an admission of liability or concession that Plaintiff is entitled to recover this (or any) amount.

441408

11

1    itemized statements provided to employees failed to include the proper gross wages

2    earned, the total hours worked, the proper net wages earned, and all applicable

3    hourly rates in effect during the pay period and the corresponding number of hours

4    worked at each hourly rate by the employee." Exhibit A, ¶¶ 16, 32.[6]  While

5    Plaintiff alleges various systemic inaccuracies applicable to all putative class

6    members (*see id.*, ¶¶ 31-38), she specifically asserts that wage statements issued by

7    Wells Fargo Bank to the putative class "failed to include the accurate gross wages

8    because the appropriate regular rate of pay for overtime, paid sick leave, etc. was

9    not being paid to the employee." *Id.*, ¶ 33.  This specific allegation appears to

10   correspond to Plaintiff's putative Class B and Class C, which are comprised of

11   nonexempt employees who "received payment for paid time off" or "received

12   payment for overtime hours worked," respectively. *Id.*, ¶ 26.  In other words,

13   Plaintiff necessarily alleges that every wage statement corresponding to a pay

14   period in which a putative class member either "received payment for paid time off"

15   or "received payment for overtime hours worked" *must* be inaccurate, because each

16   and every such wage statement included an incorrect calculation of paid time off or

17   overtime based on an incorrect regular rate of pay.

18        Through her wage-statement claim, Plaintiff seeks "damages, penalties, costs

19   and attorneys' fees" pursuant to Labor Code section 226(e). Exhibit A, ¶ 40. That

20   section "provides for a penalty of $50 for the initial pay period and $100 for each

21   subsequent pay period, up to a total of $4,000, when the employer intentionally fails

22   to provide an accurate wage statement." *Martinez v. Morgan Stanley & Co. Inc.*,

23   No. 09CV2937-L(JMA), 2010 WL 3123175, at *6 (S.D. Cal. Aug. 9, 2010).  A

24   one-year statute of limitations applies to Plaintiff's wage-statement claim brought

25   under Labor Code section 226(a). *See, e.g., Morales v. Jerome's Furniture*

26   *Warehouse*, No. 18CV1662 JM(AGS), 2019 WL 1091444, at *5 (S.D. Cal. Mar. 8,

27   _____

28   [6] Plaintiff contends that Wells Fargo Bank committed the violations alleged in the
     Complaint willfully. *Id.* at 13, Prayer for Relief, ¶ 6.

441408                                      12

1   2019) (citing Lab. Code § 226(e)(1); Civ. Proc. § 340)); *Martinez*, 2010 WL

2   3123175, at *6 ("Statutes for a penalty such as Labor Code Section 226 are

3   governed by a one-year statute of limitations.").

4        Thus, based on Plaintiff's allegations in her wage statement claim as to

5   Classes B and C—and only including nonexempt employees who received overtime

6   pay in connection with incentive compensation payments, thus implicating the

7   "regular rate of pay" calculation, or who received paid sick leave during the one

8   year prior to the filing of the Complaint—and assuming the absolute minimum of

9   one initial violation per putative class member, yields a minimum of **$1,160,750** put

10  in controversy by Plaintiff's first cause of action: (23,215 unique team members[7]

11  (x) $50 per team member as an initial violation = $1,160,750). Indeed, the amount

12  Plaintiff puts in controversy as to this claim is undoubtedly higher, as Wells Fargo

13  Bank issued over 100,000 wage statements including overtime payments based on

14  payment of incentive compensation or paid sick leave during the one year prior to

15  the filing of the Complaint. Assuming that each unique team member received

16  three allegedly inaccurate wage statements, the amount in controversy rises to

17  **$5,803,750**: (23,215 unique team members (x) $50 per team member as an initial

18  violation) + (23,215 unique team members (x) $100 per team member as a

19  subsequent violation (x) 2 subsequent violations). Taken alone, Plaintiff's first

20  cause of action for inaccurate wage statements puts in controversy more than the

21  requisite $5 million for purposes of CAFA jurisdiction.

22       **2.    Second Cause of Action (Failure to Pay Overtime Wages)**

23       Plaintiff alleges that she and putative class members "were not paid proper

24  overtime when they worked overtime hours because Defendants [sic] failed to

25  include all compensation during a given period when determining the Regular Rate

26

27  [7] This figure only includes team members who received paid sick leave or an overtime
    payment based on payment of incentive compensation during the one-year statute of
28  limitations.

441408                                    13

1    of Pay." Exhibit A, ¶ 45. As one example, Plaintiff alleges that every putative

2    class member who received overtime pay in the same pay period as receiving a

3    nondiscretionary bonus was underpaid with respect to that overtime, because the

4    amount of overtime paid should have been calculated using a different calculation

5    resulting in higher overtime payments to team members. Exhibit A, ¶ 47. In

6    alleging that Wells Fargo Bank incorrectly calculated the regular rate of pay with

7    respect to nondiscretionary bonuses, Plaintiff cites to *Alvarado v. Dart Container*

8    *Corp. of California*, 4 Cal. 5th 542, 562 (2018). Exhibit A, ¶ 47. There, the

9    California Supreme Court held that "a flat sum bonus must be expressed as a per-

10   hour value if it is to affect the overtime pay rate" and thus, that "for the limited

11   purpose of calculating the overtime pay rate, a flat sum bonus must be *treated as if*

12   it were earned on a per-hour basis throughout the relevant pay period." *Alvarado*, 4

13   Cal. 5th at 562. Specifically, the Court held that, in calculating the regular rate of

14   pay in connection with flat-sum bonuses, an employer must "divid[e] the amount of

15   the bonus by the total number of nonovertime hours actually worked during the

16   relevant pay period and us[e] 1.5, not 0.5, as the multiplier for determining the

17   employee's overtime pay rate." *Id.* at 573.

18       Therefore, in alleging specifically that, under *Alvarado*, Wells Fargo Bank

19   miscalculated the putative class's regular rate of pay with respect to

20   nondiscretionary, flat-sum bonuses, Plaintiff necessarily asserts that the overtime

21   paid as to those bonuses should have been at least three times higher (the difference

22   between using a 0.5x multiplier and a 1.5x multiplier). In other words, Plaintiff's

23   Complaint alleges that Wells Fargo Bank should have treated (but did not treat)

24   nondiscretionary bonuses as "flat-sum compensation" and cites specifically to

25   *Alvarado*, which stands for the proposition that the regular rate of pay for flat-sum

26   bonuses must be calculated using a 1.5 multiplier rather than a 0.5 multiplier.

27       Plaintiff asserts a four-year statute of limitations as to her wage claims,

28   defining the putative class as individuals employed "at any time from four years

441408

14

1    prior to the date of filing this action." Exhibit A, ¶ 26.  Plaintiff also claims that her

2    wage claims are recoverable under the Unfair Competition Law (Cal. Bus. & Prof.

3    Code §§ 17200, *et seq.*), which borrows from other laws by making them

4    independently actionable as unfair competitive practices with a four-year statute of

5    limitations.  *See, e.g., Korea Supply v. Lockheed Martin Corp.*, 29 Cal. 4th 1134,

6    1143 (2003); Cal. Bus. & Prof. Code § 17208.

7         During the four-year statute of limitations, according to Wells Fargo Bank's

8    review of its records, Wells Fargo Bank paid $1,736,412 in overtime payments in

9    connection with Retail Banking Quarterly and Annual Bonuses (the two types of

10    bonuses earned by Plaintiff).  Therefore, the amount in controversy for this claim is

11    at least three times the overtime actually paid ($1,736,412) minus the amount

12    already paid.  That number is $1,736,412 (x) 2 = **$3,472,824**.

13         Thus, the second cause of action on its own also puts in controversy over $3

14    million for purposes of establishing CAFA jurisdiction.[8]

15         ### 3.    <u>Fourth Cause of Action (Waiting-Time Penalties)</u>

16         Under her fourth cause of action, Plaintiff alleges that Wells Fargo Bank

17    willfully failed and refused to pay her and the putative class members all wages due

18    at the time of termination of employment, and seeks "waiting-time penalties"

19    pursuant to California Labor Code sections 201-203 on behalf of nonexempt team

20    members no longer employed by Wells Fargo Bank.  *See* Exhibit A, ¶¶ 56-61.

21         Plaintiff's fourth cause of action is derivative of her second cause of action.

22    In other words, Plaintiff will undoubtedly contend that just one instance of failure to

---

23    [8] This calculation conservatively estimates the amount in controversy, because it does not

24    reflect any adjustment based on an additional element of the "regular rate of pay"
     calculation advocated by Plaintiff, namely dividing the bonus compensation by only

25    straight time hours worked rather than all hours (including overtime).  Plaintiff alleges that
     "Defendants would treat all non-dsicretionary [sic] earnings as a production bonus to

26    which Defendants would then use a larger divisor consisting of all regular and overtime
     hours when computing the appropriate regular rate of pay.  However, a portion of the non-

27    discretionary earnings should be treated as a flat-sum compensation, which requires a

28    smaller divisor consisting of only regular hours worked."  Exhibit A, ¶ 47.

441408                                    15

1   pay overtime wages owed to a then-current and now-former non-exempt team

2   member is enough to trigger a waiting-time penalty for that team member. *See,*

3   *e.g., Marquez v. Toll Glob. Forwarding (USA) Inc.*, No. 218CV03054ODWASX,

4   2018 WL 3046965, at *4 (C.D. Cal. June 19, 2018) (noting that "[r]ecovery of

5   penalties under Cal. Labor Code § 203 does not hinge upon the number of

6   violations committed" and finding that for purposes of assessing the amount in

7   controversy, defendant could assume that "all 112 terminated/resigned employees

8   experienced *some* kind of [alleged] violation . . . for which they were still owed

9   wages at the time their employment ended" (emphasis added)).

10      Under California Labor Code section 203, an employee can recover a

11  "waiting-time" penalty of up to the equivalent of thirty (30) days of pay. *See* Cal.

12  Labor Code § 203; *see also Mamika v. Barca*, 68 Cal. App. 4th 487, 494 (Cal. Ct.

13  App. 1998) ("Under section 203, an employee's rate of pay must be calculated as a

14  daily figure, which can then be multiplied by the number of days of nonpayment for

15  a maximum of 30 days."). Furthermore, "[s]uit may be filed for these penalties at

16  any time before the expiration of the statute of limitations on an action for the

17  wages from which the penalties arise." Cal. Labor Code § 203. A claim for

18  waiting-time penalties has a three-year statute of limitations. *See Brewer v.*

19  *General Nutrition Corp.*, No. 11-CV-3587 YGR, 2015 WL 5072039, at *13 (N.D.

20  Cal. Aug. 27, 2015) (citing *Pineda v. Bank of Am.*, 50 Cal. 4th 1389, 1401-02

21  (2010)).[9]

22      At least 14,000 nonexempt employees who received overtime pay in

23  connection with a bonus payment or paid sick leave (and, thus, putative class

---

[9] Unlike the first and second causes of action discussed above, Plaintiff's waiting-time
penalty claim is subject to a *three-year* statute of limitations, notwithstanding her UCL
claim. *See Montecino v. Spherion Corp.*, 427 F. Supp. 2d 965, 967-68 (C.D. Cal. 2006)
(finding that "it is clear that payments made under § 203 are penalties, rather than wages,"
and holding that three-year statute of limitations applies, notwithstanding UCL claim);
*Pineda v. Bank of America, N.A.*, 50 Cal. 4th 1389, 1402 (2010) ("We thus hold section
203 penalties cannot be recovered as restitution under the UCL").

1   members) have left Wells Fargo Bank's employ in the three-year period preceding

2   the filing of this suit.  Accordingly, Plaintiff is seeking 30 days of waiting-time

3   penalties on behalf of at least 14,000 individuals.  Conservatively assuming that

4   each putative class member worked only part-time (four hours a day), the amount of

5   waiting-time penalties that Plaintiff seeks on behalf of just *one* former non-exempt

6   team member is $2,209.20 (average hourly rate of $18.41 per hour (x) 4 hours per

7   day = daily wage rate of $73.64 (x) 30 days = $2,209.20).  Thus, the aggregate

8   amount of penalties Plaintiff seeks in connection with her fifth cause of action *alone*

9   is *at least* **$30,928,800** (*i.e.*, $2,209.20 per former non-exempt California team

10  member (x) at least 14,000 non-exempt team members who left Wells Fargo Bank's

11  employ within the three-year statutory period).

12              **4.    Summary re: Amount in Controversy**

13          As illustrated above, the amount in controversy for Plaintiff's first, second,

14  and fourth causes of action alone is *at least* **$40,205,374** [$5,803,750 + $3,472,824

15  + $30,928,800 for the first, second and fourth causes of action as discussed above,

16  respectively].  This is more than $35 million over the jurisdictional minimum of

17  $5,000,000 set forth in 28 U.S.C. section 1332(d)(2).

18          This amount in controversy does not even include amounts relating to

19  Plaintiff's third, fifth and sixth causes of action (alleged failure to pay vacation,

20  alleged unfair business practices, and conversion, respectively), for which Plaintiff

21  seeks to recover additional damages and penalties.  Nor does it include attorneys'

22  fees sought by Plaintiff in connection with the alleged Labor Code violations.[10]  *See*

23  Exhibit A, ¶¶ 2, 26, 40-41, 50, 55, 62.

24  _____

25  [10] "[T]he amount in controversy is determined by the complaint operative at the time of
    removal and encompasses *all relief* a court may grant on that complaint if the plaintiff is

26  victorious." *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 414–15 (9th Cir. 2018)
    (emphasis added). "The phrases 'all relief' and 'certain classes of damages' encompass all

27  of the plaintiff's future recovery, not lost wages alone. Accordingly, *Chavez's* reasoning
    clearly applies to attorneys' fees." *Fritsch v. Swift Transportation Co. of Arizona, LLC,*

28

441408

NOTICE OF REMOVAL

1  Given the foregoing, this Court has original jurisdiction over this action

2  pursuant to 28 U.S.C. section 1332(d)(2), and removal is proper under 28 U.S.C.

3  sections 1441 and 1446.

4  **III.   PROCESS, PLEADINGS AND ORDERS**

5  The following exhibits are attached to this Notice of Removal:

6  • Attached as <u>Exhibit A</u> is a true and correct copy of the Complaint filed

7  with the Superior Court of the State of California, County of San

8  Diego on May 17, 2019, and the Notice of Case Assignment and Case

9  Management Conference issued by the San Diego Superior Court on

10  May 20, 2019.

11  • Attached hereto as <u>Exhibit B</u> is a true and correct copy of the

12  Summons, filed with the Superior Court of the State of California,

13  County of San Diego on May 17, 2019.

14  • Attached hereto as <u>Exhibit C</u> is a true and correct copy of Corporation

15  Service Company's Notice of Service of Process, showing that Wells

16  Fargo Bank was personally served on May 29, 2019.

17  • Attached hereto as <u>Exhibit D</u> is a true and correct copy of the Articles

18  of Association for Wells Fargo Bank, National Association, as issued

19  by the Office of the Comptroller of the Currency, Administrator of

20  National Banks.

21  • Attached hereto as <u>Exhibit E</u> is a copy of Plaintiff's Notice of Related

22  Cases filed with the Superior Court of the State of California, County

23  of San Diego on May 17, 2019.

24

25  _____

26  899 F.3d 785, 794–95 (9th Cir. 2018); *see also, e.g., Lowdermilk v. U.S. Bank Nat'l Ass'n,*
*479 F.3d 994, 1000 (9th Cir. 2007)* ("[W]here the underlying statute authorizes an award

27  of attorneys' fees, either with mandatory or discretionary language, such fees may be

28  included in the amount in controversy."), *overruled on other grounds as recognized by*
*Rodriguez v. AT & T Mobility Serv. LLC*, 728 F.3d 975, 976-77 (9th Cir. 2013).

441408

18

1         Wells Fargo Bank is informed and believes that Exhibits A, B, and E

2   constitute all process, pleadings and orders filed and received by Wells Fargo Bank

3   in this action.

4         On this or the next business day, notice of this removal is being given to

5   Plaintiff and to the Clerk of the San Diego Superior Court.  Copies of these notices

6   are attached hereto as <u>Exhibits F and G</u>, respectively.

7         The proof of service of the Notice to Adverse Party of Removal will be filed

8   with this Court immediately after the Superior Court filing is accomplished and the

9   document is served.

10

11   DATED: June 27, 2019        KADING BRIGGS LLP

12                         GLENN L. BRIGGS

                           THERESA A. KADING

13                         P. BARTHOLOMEW QUINTANS

14

15                        By:

16                            THERESA A. KADING

17                        Attorneys for Defendant

                       WELLS FARGO BANK, N.A.

18

19

20

21

22

23

24

25

26

27

28

441408

NOTICE OF REMOVAL